UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHANA CHANDRA SEKARA REDDY,<br>Plaintiff,<br>v.<br>GENPACT LLC, et al.,<br>Defendants. | No. 2:25-cv-02138-DAD-JDP<br><br>ORDER DENYING DEFENDANTS' MOTION TO COMPEL ARBITRATION<br><br>(Doc. No. 12) |

This matter is before the court on defendants' motion to compel arbitration. (Doc. No. 12.) On October 20, 2025, the pending motion was taken under submission on the papers pursuant to Local Rule 230(g). (Doc. No. 15.) For the reasons set forth below, defendants' motion will be denied.

**BACKGROUND**

On June 25, 2025, plaintiff Rachana Chandra Sekara Reddy filed this action in the Sacramento County Superior Court against defendants Genpact LLC, Ayush Sharma, and unnamed Doe defendants 1 to 50. (Doc. No. 1-2 at 2.) In her complaint, plaintiff brings twelve state law claims, including one for pregnancy harassment in violation of California Government Code § 12940, et seq. (*Id.*) On July 30, 2025, defendants removed this action to this federal

/////

court pursuant to diversity jurisdiction. (Doc. No. 1 at 4.) In her complaint, plaintiff alleges as follows.

Plaintiff began working at defendant Genpact on or about June 15, 2022, as a Senior Managing Consultant. (Doc. No. 1-2 at ¶ 7.) For approximately two years and seven months, plaintiff was a valued employee who received verbal praise and positive evaluations. (*Id.* at ¶ 8.) In or about October 2024, plaintiff learned that she was pregnant. (*Id.* at ¶ 9.) In or about the end of January 2025, plaintiff reached out to defendant Genpact's senior human resources manager and inquired about the process for applying for maternity leave. (*Id.* at ¶ 10.) Plaintiff was informed that she could not apply for maternity leave until one month prior to her due date. (*Id.* at ¶ 11.) In or about the end of February 2025, plaintiff informed defendant Genpact that she was pregnant, that she was due to deliver her child on or about June 5, 2025, and that she would be taking maternity leave. (*Id.* at ¶ 12.) She also stated that she would be available to work up until her due date. (*Id.*)

In response, plaintiff was informed that she was not currently working on a client-facing project and would need to find one. (*Id.*) Then, on or about April 10, 2024, plaintiff was told that she had two weeks to find a client-facing project to work on or else she would be terminated. (*Id.* at ¶ 13.) Plaintiff attempted to find a client-facing project, but she was told that only a long-term project was available, and she could only work on a short-term project. (*Id.* at ¶¶ 14–15.) Plaintiff was confused by this because if someone was sick or on leave, defendant Genpact could find someone to temporarily replace them on a long-term project. (*Id.* at ¶ 16.) After plaintiff pushed back on the decision not to staff her on the long-term project, defendant Sharma told plaintiff, "I don't think that's possible because you are going on leave. The client wants 100% availability, and you will be going on maternity leave so I don't think you would qualify." (*Id.* at ¶ 18.) After plaintiff complained to another employee, defendant Sharma falsely provided that employee a different reason for not staffing plaintiff on the long-term project. (*Id.* at ¶ 20.)

On or about April 22, 2025, defendant Genpact's Vice President reached out to plaintiff about another opportunity to work on a project, and plaintiff was open about the fact that she would be going on maternity leave in June for about twelve weeks. (*Id.* at ¶ 21.) In response, the

Vice President said he was not going to place plaintiff on the project because he did not want to struggle without a project manager while plaintiff was on maternity leave. (*Id.*) On or about April 24, 2025, defendant Genpact terminated plaintiff's employment. (*Id.* at ¶ 22.)

On September 23, 2025, defendants filed the pending motion to compel arbitration. (Doc. No. 12.) On October 7, 2023, plaintiff filed an opposition to the pending motion. (Doc. No. 13.) On October 17, 2025, defendants filed their reply thereto. (Doc. No. 14.)

**LEGAL STANDARD**

A written provision in any contract evidencing a transaction involving commerce to settle a dispute by arbitration is subject to the Federal Arbitration Act ("FAA"). 9 U.S.C. § 2. There is generally a "liberal federal policy favoring arbitration agreements." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 504 (2018). The FAA confers on the parties involved the right to obtain an order directing that arbitration proceed in the manner provided for in a contract between them. 9 U.S.C. § 4. In considering a motion to compel arbitration, the "court's role under the [FAA] . . . is limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence the existence of an agreement to arbitrate. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015); *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (citing *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996)). "When deciding a motion to compel arbitration, a district court must treat the facts as they would when ruling on a motion for summary judgment, construing all facts and reasonable inferences that can be drawn from those facts in a light most favorable to the non-moving party." *Turner v. Tesla, Inc.*, 686 F. Supp. 3d 917, 922 (N.D. Cal. 2023) (internal quotation marks and citation omitted); *see also Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) ("The summary judgment standard is appropriate because the district court's order compelling arbitration is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate.") (internal quotation marks and citation omitted).

## DISCUSSION

Plaintiff contends that she cannot be compelled to arbitrate in this case because she has adequately pled a claim for sexual harassment and as a result the Ending Forced Arbitration Act ("EFAA") applies here. (Doc. No. 13.) Defendant argues that the EFAA does not apply. (Doc. Nos. 12, 14.)

This recent amendment to the FAA exempts from forced arbitration those cases that are related to sexual assault or sexual harassment disputes. 9 U.S.C. § 402(a). Specifically, the EFAA modifies the FAA and provides as follows:

> **(a) In general.**--Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.
>
> **(b) Determination of applicability.**--An issue as to whether this chapter applies with respect to a dispute shall be determined under Federal law. The applicability of this chapter to an agreement to arbitrate and the validity and enforceability of an agreement to which this chapter applies shall be determined by a court, rather than an arbitrator, irrespective of whether the party resisting arbitration challenges the arbitration agreement specifically or in conjunction with other terms of the contract containing such agreement, and irrespective of whether the agreement purports to delegate such determinations to an arbitrator.

9 U.S.C. § 402.

Under the EFAA, a "'sexual harassment dispute' means a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." *Id.* § 401(4). "An issue as to whether" the EFAA "applies with respect to a dispute shall be determined under Federal law." *Id.* § 402(b). The EFAA applies "with respect to any dispute or claim that arises or accrues on or after the date of enactment." *Id.* § 401 note.

Defendants argue that the EFAA does not apply here because plaintiff has merely alleged a few purportedly discriminatory official employment actions, which do not and cannot support a claim of sexual harassment under the applicable state law. (Doc. Nos. 12, 14.)

/////

In addressing a similar argument, one judge of this district court has persuasively explained as follows:

> It is true that generally a plaintiff pursuing a harassment claim must show more than "occasional" or "isolated" incidents. *Fowler v. Fever Labs Inc.*, No. 20-10369, 2021 WL 183318, at *2 (C.D. Cal. Jan. 15, 2021). Rather, he must demonstrate "a concerted pattern of harassment of a repeated, routine or a generalized nature . . . ." *Id.* (citation and marks omitted). But "[a] single incident of harassing conduct is sufficient to create a triable issue regarding the existence of a hostile work environment if the harassing conduct has unreasonably interfered with the plaintiff's work performance or created an intimidating, hostile, or offensive working environment." Cal. Gov't Code § 12923(b). Thus, it is possible for a state court to find a valid harassment claim exists, even if there were only a handful of incidents. Here, Palencia Caba pleads more than one incident prior to his termination, in addition to his not receiving an offer to return; these allegations appear sufficient to state a harassment claim.
>
> Similarly, common management duties "such as hiring and firing, . . . office or work station assignments, . . . [and] deciding who will be laid off" generally "do not come within the meaning of harassment . . . ." *Reno v. Baird*, 18 Cal. 4th 640, 647 (1998). "However, 'some official employment actions done in furtherance of a supervisor's managerial role can also have a secondary effect of communicating a hostile message, . . . when the actions establish a widespread pattern of bias.' " *Davis v. Phillips 66*, No. 17-128, 2017 WL 6558697, at *8 (N.D. Cal. Dec. 22, 2017) (quoting *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 705–709 (2009), *as modified* (Feb. 10, 2010)). So it is possible for a court to find a manager's performance of her essential duties contributes to an actionable harassment claim.

*Palencia Caba v. Caleres, Inc.*, No. 2:21-cv-02012-KJM-AC, 2022 WL 1138077, at *3–4 (E.D. Cal. Apr. 18, 2022).

Here, plaintiff has alleged that defendants took multiple official employment actions and in opposition to the pending motion she credibly argues that these actions together communicated "a widespread, demeaning message to [p]laintiff that female employees who are pregnant are not wanted in the workplace at Genpact." (Doc. No. 13 at 8.) The undersigned has previously found that the EFAA applies where the plaintiff pleads "nonfrivolous claims relating to sexual assault or to conduct alleged to constitute sexual harassment, with the sufficiency of those claims to be reserved for proper merits adjudication." *Cardenas v. F.D. Thomas, Inc.*, No. 2:24-cv-01814-DAD-JDP, 2025 WL 418753, at *3 (E.D. Cal. Feb. 6, 2025) (citation omitted). The Ninth Circuit has not yet had the opportunity to weigh in on whether the appropriate inquiry is whether a

plaintiff has asserted a nonfrivolous claim of sexual assault or sexual harassment. *See Combs v. Netflix, Inc.*, 180 F.4th 1201, 1204 (9th Cir. 2026) ("To determine whether the EFAA covers a plaintiff's claims, we first consider whether the allegations in the complaint sound in sexual harassment or sexual assault. Here, there is no question that the complaint alleges conduct constituting unlawful sexual harassment. Combs's claims therefore presumptively fall within the EFAA, and, absent anything further, she could elect to proceed in court rather than through arbitration."). Therefore, this court will continue to apply the "nonfrivolous" standard that it adopted in *Cardenas*.

Here, the court finds that plaintiff has pled "nonfrivolous claims relating . . . to conduct alleged to constitute sexual harassment," as is required in order for the EFAA to apply.[1] *Cardenas*, 2025 WL 418753, at *3.; *see also Solis v. Prime Comms Retail, LLC*, No. 5:24-cv-02389-AH-SHK, 2025 WL 1255143, at *3 (C.D. Cal. Apr. 7, 2025) (finding that allegations of official employment actions such as denying accommodations, scheduling shifts, and transferring the plaintiff from one store to another "amount to nonfrivolous claims of sexual harassment" for purposes of the EFAA); *Landucci v. State Farm Ins. Co.*, No. 5:14-cv-00789-LHK, 2014 WL 3705117, at *6 (N.D. Cal. July 23, 2014) ("Here, Plaintiff argues . . . that Colker's supervisory actions with respect to Plaintiff had the secondary effect of communicating his hostile message that females are not valued. Construing the Complaint in a light most favorable to the Plaintiff, the Court concludes Plaintiffs' allegations at least colorably allege that Colker, by excessively monitoring, micromanaging, and criticizing Plaintiff but not her male co-workers, engaged in discriminatory actions based on her gender in order to send a message to the work force that female employees were not valued.").

Having determined that the EFAA applies here, the court concludes that plaintiff may not be compelled to arbitrate this case. Accordingly, defendants' motion to compel arbitration will be denied.

/////

---

[1] The court need not and does not evaluate plaintiff's sexual harassment claim according to the higher standard set by Rule 12(b)(6). *Cardenas*, 2025 WL 418753, at *3.

**CONCLUSION**

For the reasons explained above,

1. Defendants' motion to compel arbitration of plaintiff's claims (Doc. No. 12) is DENIED; and

2. The Initial Scheduling Conference in this case is hereby RESET for September 28, 2026 at 01:30 p.m. in Courtroom 4 (DAD) before District Judge Dale A. Drozd. The parties shall file a joint scheduling report by no later than September 14, 2026.

IT IS SO ORDERED.

Dated: **August 26, 2026**

Dale A. Drozd

DALE A. DROZD
UNITED STATES DISTRICT JUDGE